UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ADRIAN JUAN LLOYD,

Plaintiff,

v.

M. HOWARD,

Defendant.

Case No.: 1:24-cv-01086-JLT-CDB

**FINDINGS AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

(Doc. 18)

Plaintiff Adrian Juan Lloyd is proceeding pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. This case proceeds on Plaintiff's First Amendment free exercise claim against Defendant Howard.

**I. INTRODUCTION**

On February 17, 2026, Defendant filed a motion for summary judgment addressing the merits of Plaintiff's claim. (Doc. 18.) Following an extension of time, Plaintiff filed an opposition to Defendant's motion (Doc. 25)[1] and Defendant replied (Doc 26).[2]

---

[1] On April 2, 2026, Plaintiff filed a document titled "Addendum Declaration of Adrian Lloyd," noting he "neglected to address the issue of qualified immunity," and proffering his opposition thereto. (Doc. 27.)

[2] On April 29, 2026, the Court issued its Order Granting Defendant's Motion to Strike Plaintiff's Sur-reply to Defendant's Motion for Summary Judgment (Doc. 29), directing the Clerk of the Court to strike Plaintiff's filing of April 14, 2026. (Doc. 30.)

## II. SUMMARY OF THE PARTIES' BRIEFING

***Defendant's Summary Judgment Motion (Doc. 18)***

Defendant contends Plaintiff's First Amendment rights were not violated because the denial of Plaintiff's request for peanut butter lunches did not burden the practice of his religion. Further, Defendant argues that the denial of Plaintiff's request for a modification of his diet to include peanut butter lunches was reasonably related to legitimate penological interests. Finally, Defendant contends he is entitled to qualified immunity. Defendant asks the Court to grant summary judgment in his favor and to dismiss this case.

***Plaintiff's Opposition (Doc. 25)***

Plaintiff's opposition is comprised of his responses to Defendant's undisputed statement of material facts (Doc. 25 at 1-16), an untitled one-page document presenting six questions (*id*. at 17), exhibits A through D[3] (*id*. at 18-27), and multiple declarations in support of his opposition (*id.* at 28-37). The Court will address Plaintiff's specific arguments in its analysis where appropriate.

***Defendant's Reply (Doc. 26)***

Defendant maintains that Plaintiff was not denied a religious diet. The denial of Plaintiff's preferred peanut butter lunch diet did not violate Plaintiff's constitutional rights because the denial did not substantially burden Plaintiff's religious practice and Plaintiff was already on a vegetarian diet that conformed to his religious beliefs. Defendant contends Plaintiff failed to present any evidence to demonstrate the applicable *Turner* factors weigh in his favor. Lastly, Defendant asserts he is entitled to qualified immunity and that Plaintiff fails to identify case law involving similar facts.

//

//

//

[3] Exhibit D is unrelated to the issue before this Court. Exhibit D is a First Level Reviewer's Response dated May 14, 2008, from California State Prison-Sacramento concerning Plaintiff's request to receive prayer oil. (*See* Doc. 25 at 27.) To the extent Plaintiff offered Exhibit D as evidence of his sincerely held religious beliefs, Defendant does not argue Plaintiff's Rastafarian beliefs were not sincerely held.

## III. DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

**Parties**

1. Plaintiff Adrian Lloyd (V00729) is a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR").
2. Lloyd was housed at Kern Valley State Prison ("KVSP") on A-Facility in 2019 and 2020.
3. Defendant Howard was a Chaplain at KVSP for all times relevant to the allegations in the Complaint.

**Available Religious Diets**

4. In 2019, CDCR offered three religious alternative diets to the standard issued diet: a kosher diet, a religious meat alternate ("RMA"), and a vegetarian diet.
5. In 2019, a plant-based diet was pending implementation in CDCR institutions.
6. The kosher diet and RMA diet contained meat.
7. The vegetarian diet was lacto-ovo, meaning that it normally included dairy and eggs.
8. There was a protein alternative for the vegetarian diet available every day at the request of inmates receiving the vegetarian diet that switched out the dairy and the eggs.
9. Inmates would need to show kitchen staff their religious diet card to obtain a protein alternative.

**CDCR Policy Regarding Religious Diets**

10. Under CDCR regulations in effect during 2019, if an inmate wished to receive a religious diet, or change between religious diets, the inmate had to complete and submit a CDCR Form 3030, Religious Diet Program Request to a chaplain.
11. Upon receipt of a CDCR 3030 form, a chaplain would interview the inmate to determine his or her eligibility for the diet.
12. Following the interview, the chaplain can approve the inmate's request for a diet or refer the request to the institution's Religious Review Committee ("RRC").
13. A chaplain may not unilaterally deny a request for a religious diet.

14. The RRC met monthly to review religious diet requests and generally consisted of a combination of various members at the institution, including for example, the Community Resource Manager, Food Manager, chaplains, Associate Wardens, and sometimes other correctional staff.
15. The RRC, consisting of at least three members, would determine whether a particular inmate qualified for a religious diet.
16. The RRC's decision to deny a religious diet must be unanimous.

**Scope of Defendant Howard's Responsibilities**

17. As a chaplain, Defendant Howard was only able to facilitate requests to switch between the three religious diets available following the submission of a CDCR Form 3030.
18. Defendant Howard was not responsible for developing or implementing new diets.
19. Defendant Howard was unable to modify any of the existing diets.
20. If an inmate had medical issues or specific allergies related to a diet, Defendant Howard would refer that inmate to medical services for modifications of any of the available diets.
21. Defendant Howard had no control over whether an inmate received a protein alternative for the vegetarian diet.
22. On December 26, 2019, Defendant Howard responded to Plaintiff's request to modify his diet to only peanut butter lunches to inform him that the request had been reviewed by the RRC and was denied.

**Plaintiff's Rastafarian Diet and Request to Defendant Howard**

23. Plaintiff is a practicing Rastafarian, who alleges he does not consume fish, meat, or eggs and prefers, but is not required, to not consume dairy.
24. Plaintiff was on the vegetarian diet from 2019-2022 at KVSP.
25. Plaintiff claims that on or around December 26, 2019, he requested that Defendant Howard modify his diet to be only peanut butter lunches.

26. Plaintiff wanted only peanut butter lunches because it was "more convenient" and "healthier than cheese and eggs."

27. At the time of his request, Plaintiff was already on the vegetarian religious diet and could obtain the protein alternate.

28. Defendant Howard did not unilaterally deny Plaintiff's request for a diet of peanut butter lunches.

29. Defendant Howard wrote a letter to Plaintiff on January 22, 2020 regarding Plaintiff's request for diet modification, explaining that Plaintiff was already on the vegetarian diet but had purchased items in contravention of his religious agreement and alleged religious beliefs.

30. Plaintiff repeatedly purchased food items at the canteen that violated his religious diet agreement.

31. The RRC was unable to grant Plaintiff's request to modify his diet to consist solely of peanut butter sandwiches because it was not one of the available religious diets.

32. The vegetarian diet offered to Plaintiff in 2019 was the closest diet offered that conformed to Plaintiff's preferred diet.

33. While at KVSP in 2019 and 2020, Plaintiff could pray, attend services, engage in religious study, and purchase religious items including clothing.

**Legitimate Penological Interests**

34. CDCR has a legitimate interest in providing religious diets to individuals with sincere religious beliefs.

35. CDCR has a legitimate interest in controlling costs in a streamlined food service.

36. It would be incredibly expensive to provide inmates with the meals and diets of their choice.

37. Prison resource allocation would be significantly impacted if individual modifications of existing diets were permitted.

(Doc. 18-3 [UDF].)

## IV. PLAINTIFF'S OPERATIVE COMPLAINT[4]

> … Plaintiff states Defendant Howard is an institutional chaplain in charge of religious diet issues. (Doc. 66 at 3.) Plaintiff contends that on December 26, 2019, Howard "officially refused to do his assigned duties in regards to Plaintiff's religious dietary needs," by denying him access to a diet within "the dietary tenets of Rastafari when he directed Plaintiff to 'Health Services' to resolve the issue." (*Id*. at 3, 7.) Plaintiff contends the "DOM policy, section 54080.14" states that "institutional chaplains oversee religious diets." (*Id*. at 7.)
>
> Plaintiff contends [Defendant Howard was] acting under color of state law when [he] violated his "civil rights, CCR, and DOM guidelines." (Doc. 66 at 3.)

(*See* Doc. 3 at 4-5.) Liberally construing the complaint, the Court found Plaintiff stated a cognizable First Amendment Free Exercise Clause claim:

> Plaintiff's exhibits reveal that on December 26, 2019, Defendant Howard advised him that because Plaintiff was then receiving a Vegetarian based diet, that diet could be modified only "on a medical basis through health services." (Doc. 66 at 9.) Thereafter, following submission of a health care grievance on the same issue, Plaintiff was advised by California Correctional Health Care Services, in an institutional level response dated April 17, 2020, that the "Institution Religious Diet Program is not a matter over which" it "has jurisdiction" and that "the local institution Chaplain or designee" determines "an inmate's religious diet eligibility." (*Id*. at 10.) Plaintiff was advised to contact the chaplain at his institution. (*Id*.) Even if Howard's December 26, 2019, correspondence to Plaintiff indicating his request for a diet in accord with his Rastafarian beliefs was a mistake or misunderstanding, at screening, Plaintiff has plausibly alleged a free exercise claim against Howard based upon Howard's refusal to approve the requested religious diet.

(*See* Doc. 3 at 6.)

## V. APPLICABLE LEGAL STANDARDS

### *Motions for Summary Judgment*

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents,

---

[4] The undersigned has omitted references to Plaintiff's free exercise claim against Defendants Castillo and Anderson because that claim was severed on September 13, 2024. (*See* Doc. 13.) Plaintiff's claims against those individuals proceeds in the separate action titled *Lloyd v. Castillo, et al.*, case number 1:20-cv-00683-JLT-CDB (PC).

electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials....” Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party’s case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). “[A] complete failure of proof concerning an essential element of the nonmoving party’s case necessarily renders all other facts immaterial.” *Id.* If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or shows that the materials cited by the movant do not establish the absence of a genuine dispute. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Further, the opposing party must also demonstrate that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that “the claimed factual dispute be shown to require a jury or judge to resolve the parties’ differing versions of the truth at trial.” *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the “purpose of summary judgment is to ‘pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.’” *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of "thin air," and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

***First Amendment Free Exercise of Religion***

To state a claim under the Free Exercise Clause, an inmate must plausibly allege that a prison official's actions: (a) "substantially burden[ed]" the inmate's exercise of a sincerely-held religious belief; and (b) did so in an unreasonable manner -- i.e., the official's actions were not "rationally related to legitimate penological interests." *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-50 (1987); *Jones v. Williams*, 791 F.3d 1023, 1031, 1033 (9th Cir. 2015); *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). A substantial burden places more than an inconvenience on religious exercise; it must tend to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs. *Jones*, 791 F.3d at 1031-32. Plaintiff must demonstrate that prison officials prevented him from engaging in conduct which he sincerely believes is required by his faith. *Shakur*, 514 F.3d at 884-85. The underlying religious belief must be "sincerely held." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994); *see Shakur*, 514 F.3d at 884-85 (noting that the "sincerity test," not the "centrality test," applies to a free exercise analysis).

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "To ensure that courts afford appropriate deference to prison officials, . . . prison regulations alleged to infringe constitutional rights are judged under

a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone*, 482 U.S. at 349. A prison regulation may therefore impinge upon an inmate's right to exercise his religion if the regulation is "reasonably related to legitimate penological interests." *Shakur*, 514 F.3d at 884. Thus, prisons may lawfully restrict religious activities for security purposes and other legitimate penological reasons. *Turner v. Safley*, 482 U.S. 78, 89-90 (1987); *Pierce v. County of Orange*, 526 F.3d 1190, 1209 (9th Cir. 2008). Furthermore, the Supreme Court has held that generally-applicable laws that incidentally burden a particular religion's practices do not violate the First Amendment. *Employment Div. v. Smith*, 494 U.S. 872, 878 (1990).

## VI. EVIDENTIARY MATTERS[5] [6]

Plaintiff has reproduced and responded to Defendant's UDFs in his opposition to Defendant's summary judgment motion. (*See* Doc. 25 at 1-16.) The Court finds Plaintiff admits UDFs 1-7, 9-11, 17, 21, 22, 24, and 30; he denies UDFs 8, 12-16, 25, and 31. Further, the Court observes that Plaintiff failed to either expressly admit or deny UDFs 18-20, 23, 26-29, and 32-37; thus, the Court considers them to be denials.

The Court declines to rule on each objection. *Capitol Records, LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d 1198, 1200 n.1 (C.D. Cal. 2020) ("In motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised" [citation omitted]). Where material to its analysis, the Court will address relevant objections. Where the Court does not address any particular objection, it has determined the objection contains legal argument, does not challenge the veracity of the underlying fact or facts asserted by Defendant, or is irrelevant.[7] *See, e.g.*,

---

[5] In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

[6] To be clear, the undersigned considered Plaintiff's operative complaint to the extent it was based on his personal knowledge of admissible evidence rather than on his beliefs. *McElyea v. Babbitt,* 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium).

[7] As an example, in connection with UDF 13, Plaintiff disputes the sworn statement of Defendant that a chaplain may not unilaterally deny a request for a religious diet on the grounds that the statement is "just a claim by the Defendant

*Burghardt-Cobb v. Inch*, No. 1:17-cv-01563-DAD-SKO, 2020 WL 1974264, at *1 n.1 (E.D. Cal. Apr. 24, 2020) ("Here, although plaintiff submitted a statement of disputed facts, each of the disputes noted by plaintiff therein are actually legal arguments, do not challenge the veracity of the underlying facts, or are irrelevant ... [t]he court therefore considers the material facts of this case to be undisputed").

**VII. DISCUSSION**

Initially, the Court notes that Defendant does not dispute Plaintiff's Rastafarian beliefs are sincerely held. Thus, the relevant issues are whether Defendant's actions substantially burdened Plaintiff's religious beliefs and whether those actions were rationally related to a legitimate penological interest.

***Defendant Did Not Substantially Burden Plaintiff's Religious Beliefs***

Defendant has presented evidence that Plaintiff was on the vegetarian diet at KVSP during the relevant period. UDF 24, 27. That diet conformed with Plaintiff's religious belief that he could not consume meat, fish, or eggs. UDF 6, 7, 23. Defendant has also presented evidence that the vegetarian diet was the closest diet available that conformed to Plaintiff's preferred diet. UDF 32. Thus, Defendant has met his initial burden by demonstrating there is no genuine dispute as to any material fact concerning substantial burden. Fed. R. Civ. P. 56(a).

Because Defendant met his initial burden, the burden shifts to Plaintiff as the non-moving party to establish that a genuine issue as to any material fact actually does exist. *Matsushita*, 475 U.S. at 586.

Here, Plaintiff admitted UDF 6, 7, and 24. Therefore, there is no dispute that the vegetarian diet was the only diet that did not include meat and that Plaintiff was on the vegetarian diet while at KVSP.

Plaintiff denied or objected to UDF 23, 27, and 32. UDF 23 states: "Plaintiff is a practicing Rastafarian, who alleges he does not consume, fish, meat, or eggs and prefers, but is not required, to consume dairy." In response to UDF 23, Plaintiff asserts he "never stated that he prefers dairy as [Deputy] Attorney General Nordstrom claims in this declaration …." Plaintiff

---

minus any CCR or DOM guidelines to support the claim." (Doc. 25 at 4.)

states that in February 2025 he began "consuming a bit more cheese and milk. That is the change spoken of during the deposition." Plaintiff goes on to explain that at "DSH Stockton there wasn't freedom to exchange food … so Plaintiff had to request a vegetarian diet for religious reasons" and that a reasonable person would assume "someone requesting a vegetarian diet doesn't eat, at the least, meat." Plaintiff's objection to UDF 23 is overruled; his objection does not challenge the veracity of the underlying facts or is irrelevant. *Burghardt-Cobb*, 2020 WL 1974264, at *1 n.1.

UDF 27 states: "At the time of his request, Plaintiff was already on the vegetarian religious diet and could obtain the protein alternate." In response to UDF 27, Plaintiff challenges Defendant Howard's supporting declaration at paragraph 8 and "directs this Court back to page 8, lines 10-21 and Exhibit C." Paragraph 8 of Defendant Howard's declaration provides as follows:

> On January 22, 2020, I wrote to Mr. Lloyd in response to his follow up to my letter dated December 26, 2019. Attached as Exhibit B is a true and correct copy of the letter I sent to Mr. Lloyd on January 22, 2020. Prior to my writing of that letter and Mr. Lloyd's request for a diet modification in late 2019, Lloyd had repeatedly purchased food items at the canteen, including various meat dishes that violated his religious diet agreement.

(Doc. 18-4 at 2-3, ¶ 8.) Exhibit B referred to above is Howard's letter dated January 22, 2020, in response to an inquiry by Plaintiff; it covers a number of topics, but Plaintiff (1) complains that Howard "failed to mention/forgot that Plaintiff showed him Exhibit C,"[8] (2) states he does not eat fish and then asks questions (e.g., "who are the staff that aren't in this motion for summary judgment?"), (3) states he has never received "a requested copy of his 2014 3030 CDC form approval of a vegetarian religious diet, it didn't start on November 5, 2018," (4) states he never claimed "to be under Ital dietary tenets …," (5) acknowledges purchasing but not consuming certain canteen items, (6) asserts that he "didn't have issue with the so-called religious vegetarian diets at CSP-LAC, DSH Stockton, nor CSP-Corcoran. But at KVSP [he's] never seen that much cheese and eggs in any diet …," and (7) that "a plant diet is in accordance with a true vegetarian diet as opposed to a lacto-ovo diet which isn't." Plaintiff's objection to UDF 27 is overruled; it does not challenge the veracity of the underlying fact or is irrelevant. *Burghardt-Cobb*, 2020 WL

[8] Plaintiff's Exhibit C is an "Inmate Receipt" dated December 25, 2019, along with Plaintiff's handwritten notes and statements concerning "non-vegetarian items" purchased January 6, 2020.

1974264, at *1 n.1. For example, the specific date upon which Plaintiff started consuming the vegetarian diet is not relevant in light of the fact Plaintiff admits he was on the vegetarian diet when his claim arose. *See* UDF 24. Further, Plaintiff's response as concerns his assertion that the "lacto-ovo diet" is not "a vegetarian diet" is argumentative. *Burch v. Regents of Univ. of California*, 433 F.Supp.2d 1110, 1119 (E.D. Cal. 2006) ("statements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not facts and likewise will not be considered on a motion for summary judgment" [emphasis omitted]).

UDF 32 states: "The vegetarian diet offered to Plaintiff in 2019 was the closest diet offered that conformed to Plaintiff's preferred diet." Plaintiff states "it boggles [his] mind that Imam Howard believed that the [] lacto-ovo diet conformed to Plaintiff's Rastafarian dietary tenets." Plaintiff contends that because the other two religious diets contained meat, "there isn't 'a closest diet' to compare" and maintains that "the so-called religious 'vegetarian' diet was not, and is not, vegetarian in any form." He further asserts that Defendant Howard "never mentioned a fourth option on the religious diet, the protein option" in his December 26, 2019 or January 22, 2020 correspondence. Plaintiff's objection to UDF 32 is overruled; his objection does not challenge the veracity of the underlying facts or is irrelevant and includes legal conclusions or argumentative statements. *Burghardt-Cobb*, 2020 WL 1974264, at *1 n.1; *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment"); *Coverdell v. Dep't of Soc. & Health Servs*., 834 F.2d 758, 762 (9th Cir. 1987) (recitations of unsworn factual allegations do not adequately oppose competent evidence presented in a motion for summary judgment); *Burch*, 433 F.Supp.2d at 1119.

Plaintiff has not offered evidence to support his assertion that Defendant Howard "refused to do his assigned duties in regards to Plaintiff's religious dietary needs." (*See* Doc. 1 at 3.) Defendant's undisputed evidence reveals that Howard addressed Plaintiff's request for a dietary modification to peanut butter lunches. UDF 10-11. That evidence further establishes that Howard cannot deny a request for modification unilaterally (UDF 13); the request must be considered by the RRC, a committee comprised of at least three individuals; any denial by the RRC must be

unanimous. UDF 14-16. On this record, it is clear that Plaintiff's request for preferred peanut butter lunches was considered by Howard, referred to the RRC, and unanimously denied by the RRC.

In sum, Plaintiff's fails to meet his burden of production and his objections are overruled. Plaintiff fails to establish Defendant Howard substantially burdened his religious exercise by denying his request for peanut butter lunches. *O'Lone*, 482 U.S. at 348-50; *Jones*, 791 F.3d at 1031-32; *Shakur*, 514 F.3d at 884-85.

***Defendant's Actions Involved a Legitimate Penological Interest***

Defendant has presented evidence that denial of Plaintiff's request for a diet modification was reasonably related to legitimate penological interests.

Specifically, applying the *Turner* factors, Defendant first argues that the CDCR has a legitimate interest in controlling costs and a streamlined food service, citing UDFs 34 through 37. Defendants maintain the first *Turner* factor weighs in their favor.

Second, Defendant contends that because Plaintiff had alternatives to exercise his religion, including prayer, religious study, attending services, and religious expression through clothing, citing UDF 33, Plaintiff was not denied all means of religious expression. Defendants further assert Plaintiff "had a vegetarian diet that met his restrictions, including the ability to a protein alternative if he did not want eggs." Therefore, Defendant maintains the second *Turner* factor weighs in his favor.

Third, Defendant argues that accommodating Plaintiff's request for a diet consisting of only peanut butter lunches would have a significant impact on prison resources, citing UDFs 22 and 25 through 26. Defendant argues that Plaintiff was not seeking to change his religious diet to another religious diet; rather, Plaintiff sought to modify his existing vegetarian diet "because peanut butter lunches were 'more convenient' and 'healthier than cheese and eggs,'" citing UDFs 4 through 7, 22, and 25 through 26. Defendant contends that the "accommodation of individual modifications to existing diets for 'convenience' and purported 'health' benefits would have a significant 'ripple effect' on other inmates, staff, and the allocation of prison resources" and "individual diet modification would ruin the department's efforts to create cost-controlled and

streamlined food service, including religious diet options that meet the needs of the entire religious population," citing UDFs 36 and 37. The cost to provide individualized meals would be "astronomically high," citing UDF 36. To provide new diets, CDCR must consider vendor sourcing, the cost of preparing menus, the overhead costs associated with "recording and cataloguing every inmate's preference," and training and staffing costs, citing paragraph 3 of the Philips declaration. Finally, Defendant avers that permitting individual modifications would significantly impact prison resource allocation, citing UDF 37. Defendant contends the third *Turner* factor weighs in his favor.

Finally, Defendant argues no obvious, easy alternative exists here because "Plaintiff sought to have an entirely new personalized diet created for himself outside the scope of available diets" and that to accommodate his request, "food staff would need to create a whole new diet for Plaintiff," citing UDFs 25 and 32, and paragraph 3 of the Philips declaration. Defendant contends that "creating a diet just for Plaintiff would be [] costly and inefficient," citing UDF 37. Moreover, Defendant avers that the vegetarian diet was already the religious alternative to the standard diet that satisfied the tenets of Plaintiff's religion, citing UDF 32, and that "to the extent modifications can be obtained through medical staff, such modifications are done through the evaluation and approval of medical services – not a chaplain" and that Howard did not have the "power or control to modify Plaintiff's diet," citing UDFs 18 through 22. Because no reasonably available alternative existed, Defendant maintains the fourth *Turner* factor weighs in his favor.

Defendant has met his initial burden by demonstrating there is no genuine dispute as to any material fact concerning a legitimate penological interest. Fed. R. Civ. P. 56(a).

Because Defendant met his initial burden, the burden shifts to Plaintiff as the non-moving party to establish that a genuine issue as to any material fact actually does exist. *Matsushita*, 475 U.S. at 586.

First, the undersigned notes Plaintiff admits UDFs 4 through 7 and 22. Therefore, there is no genuine issue of material dispute that during the relevant period CDCR provided three religious alternatives to the standard diet – kosher, RMA, and vegetarian. Nor is there a genuine issue of material fact that a plant based alternative diet had not yet been implemented, that the

kosher and RMA diets contained meat, and that the vegetarian diet was lacto-ovo, meaning it contained dairy and eggs. And there is no dispute that Defendant Howard responded to Plaintiff's request to modify his diet to contain only peanut butter lunches on December 26, 2019, advising Plaintiff his request had been reviewed and denied by the RRC.

Thus, the Court turns to an examination of the remaining relevant UDFs that Plaintiff denied or were construed to be denied.

UDF 18 states: "Defendant Howard was not responsible for developing or implementing new diets." The entirety of Plaintiff's response is as follows: "See Declaration.[8]" The Court presumes Plaintiff's response refers to paragraph 8 of his own declaration; it provides as follows:

> Defendant Howard may not have been responsible for developing or implementing new diets, but in light of his knowing Plaintiff told him that the religious vegetarian (lacto-ovo) diet wasn't vegetarian, nor did it coincide with Plaintiff's religious dietary tenets, Iman Howard's 'could have' recommended the PNB lunches (suggested by Plaintiff) to the RRC, they would have abided by his decision in light of there being no religious vegetarian diet available.

(Doc. 25 at 31.) Plaintiff's objection is overruled; it includes argumentative statements and does not challenge the veracity of Defendant's fact – that Howard did not develop or implement new diets. *Burch*, 433 F.Supp.2d at 1119; *Burghardt-Cobb*, 2020 WL 1974264, at *1 n.1. Notably, Plaintiff's operative complaint alleges that Howard "officially refused to do his assigned duties in regards to Plaintiff's religious dietary needs" by denying Plaintiff "the right to access to a diet in accordance with the dietary tenets of Rastafari when he directed Plaintiff to 'health services' to resolve the issue, in direct violation of DOM Policy, section 54080.14 – institutional chaplains oversee religious diets." But Plaintiff has no personal knowledge that Defendant Howard was responsible for developing or implementing new diets, nor does Plaintiff have personal knowledge that the RRC "would have abided" any recommendation expressed by Howard.

UDF 19 states: "Defendant Howard was unable to modify any of the existing diets." Plaintiff responded that he "doesn't know that to be true" and cites ""See Declaration.[9]" Paragraph 9 of Plaintiff's declaration states:

> Plaintiff believes that due to the fact that the RRC strongly sides with "the chaplain," to this Court, "Defendant Howard either recommended that Plaintiff receive the PNB lunches or Imam

> Howard recommended that Plaintiff doesn't receive the requested PNB lunches." Your Honor in your decision to either grant or deny this motion … ask Defendant Howard was his recommendation a "yea" or a "nay"? to Plaintiff's request for all PNB lunches when he went before the RRC on that issue. Defendant Howard wasn't helpful in "any way" after Plaintiff told him, on several occasions, that "lacto-ovo isn't vegetarian," but "peanut butter is." Plaintiff needs to eat so how did Imam Howard assist Plaintiff in acquiring sustenance within Rastafari dietary tenets? Seeing that Defendant was the Imam, the man in charge of inmate religious dietary needs.

(Doc. 25 at 31-32, underlining omitted.) Plaintiff's objection is overruled. First, Plaintiff initially responded that he did not know whether the statement was true. Second, the Court does not conduct discovery. *See, e.g.*, *Womack v. Virga*, No. 2:11-cv-1030 MCE EFB P, 2012 WL 4465372, at *3 (E.D. Cal. Sept. 25, 2012) ("The role of the court is not to conduct discovery or research for the parties"). If Plaintiff wished to inquire about Defendant's recommendation to the RRC in response to Plaintiff's request, it was Plaintiff's obligation to conduct discovery seeking that information. Further, to the extent Plaintiff's response asserts the vegetarian diet is not vegetarian and does not accord with Rastafarian beliefs, his response does not challenge the veracity of Defendant's fact – that Defendant Howard was unable to modify any of the existing diets. *Burghardt-Cobb*, 2020 WL 1974264, at *1 n.1.

Next, UDF 20 provides: "If an inmate had medical issues or specific allergies related to a diet, Defendant Howard would refer that inmate to medical services for modifications of any of the available diets." In his response to UDF 20, Plaintiff asserts that Defendant Howard directed Plaintiff "to health care/medical services," that Plaintiff "never requested a diet via health care or medical," citing "Exhibit B." Additionally, Plaintiff states he did not express or hint at a medical issue or allergies when discussing "a proper religious 'vegetarian diet'" with Defendant. Plaintiff's objection is overruled. It does not challenge the veracity of Defendant's fact – that if an inmate had medical issues or specific allergies, Howard would refer that inmate to medical services. *Burghardt-Cobb*, 2020 WL 1974264, at *1 n.1. The assertion that Plaintiff was "directed … to health care/medical services" but "never requested a diet" modification due to "a medical issue or allergies" changes the fact actually alleged by Defendant and is thus not relevant. *Id*. Stated another way, the fact Howard referred Plaintiff to medical services for a modification

of the vegetarian diet, although Plaintiff did not have a medical issue or allergy, does not overcome Defendant's showing that inmates with medical issues or specific allergies are referred to medical services for diet modifications.

UDF 21 states: "Defendant Howard had no control over whether an inmate received a protein alternative for the vegetarian diet." Here, Plaintiff responds as follows:

> Ipso facto Defendant Howard did have control over an inmate receiving a protein alternative. Religious diet cards are provided by the chaplain, Exhibit A Page 492 under Inmate Responsibilities, see Exhibit A Page 491, Defendant Howard was in control of a vegetarian alternate.

Plaintiff's Exhibit A is a copy of section 54080.14 and the CDCR Department Operations Manual. (*See* Doc. 25 at 19-20.) As concerns the "Vegetarian Diet Program," it provides in relevant part: "Inmates with determined religious, personal, or ethical dietary needs and showing a Religious Diet Card shall be provided with an approved vegetarian protein alternate, often from that same days' scheduled meal." As concerns "Inmate Responsibilities," the DOM provides that inmates are responsible for: (1) completing a CDCR Religious Diet Request form and submitting it to the appropriate Institution Chaplain or designee; (2) showing their Religious Diet Card obtained from the Chaplain or designee; and (3) following the conditions in the signed Religious Diet Program Agreement. Plaintiff confuses Defendant Howard's duty to issue a Religious Diet Card when an inmate participates in a religious diet program with the specific fact alleged: that Defendant Howard did not control whether any inmate chose to receive a protein alternate as permitted in the vegetarian diet program. Hence, Plaintiff's objection is overruled.

Next, UDF 25 provides: "Plaintiff claims that on or around December 26, 2019, he requested that Defendant Howard modify his diet to be only peanut butter lunches." Plaintiff's denial states: "No that occurred months earlier if memory serves me correct via 602 action." A review of Plaintiff's operative complaint reveals Plaintiff alleged that "Defendant Howard as an institutional chaplain is in charge of the religious diet issues. On December 26, 2019 is the day that Defendant Howard officially refused to do his assigned duties in regards to Plaintiff's religious dietary needs." Plaintiff's complaint also includes a copy of an Institutional Level Rejection Notice dated April 17, 2020, bearing tracking number KVSP HC 20000260. That

document does not reference the date that the underlying grievance was submitted and Plaintiff did not include the associated grievance as an exhibit to the complaint. In any event, UDF 25 includes the phrase "on or around" and the specific date upon which Plaintiff made his request to Defendant Howard is not material to the dispute. *Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. As concerns the substance of Plaintiff's request – that he be provided only peanut butter lunches, Plaintiff's deposition testimony confirms as much. (*See, e.g.*, Lloyd Depo., at 26-27 ["instead of like three times a day, okay, this is a vegetarian tray for Lloyd, vegetarian tray, just give the guy - - knock all that out of the way and just give me four peanut butter lunches"].) Plaintiff's objection is overruled.

UDF 26 states: "Plaintiff wanted only peanut butter lunches because it was 'more convenient' and 'healthier than cheese and eggs.'" In objecting to UDF 26, Plaintiff responded as follows:

> Ask any inmate assigned to kitchen duty or any housewife which is more 'convenient' at serving time? 1. cook food and place it on a tray/plate or 2. a prepackaged meal? A reasonable person with a modicum of common sense "knows" that option number two is "more convenient." In highest regards to the basic, and humble, peanut butter being more/much healthier than "cheese and eggs" even Defendant Howard and AG Nordstrom, being the "highly" reasonable people that they are, would agree with the Plaintiff on that issue. But in the event that they're in opposition to Plaintiff's aforementioned belief, Plaintiff, in almost 63 years of existence, has never heard a medical doctor, nor anyone, say "ease off the peanut butter – it's killing you." The same isn't true for cow juice, cheese, and embryos, eggs. Selah. Plaintiff doesn't variate from what is stated in the deposition. Rastafari.

Plaintiff's objection is overruled because his response does not challenge the veracity of Defendant's fact – that Plaintiff wanted only peanut butter lunches because they were convenient and healthier. *Burghardt-Cobb*, 2020 WL 1974264, at *1 n.1. Whether Defendant or anyone else disagreed with Plaintiff's belief or whether peanut butter lunches are more convenient and healthier is not the issue and is not a basis for a denial or objection to UDF 26.

UDF 32 provides: "The vegetarian diet offered to Plaintiff in 2019 was the closest diet offered that conformed to Plaintiff's preferred diet." As previously found in its analysis regarding substantial burden, Plaintiff's objection does not challenge the veracity of the underlying fact, is

not relevant, and includes legal conclusions or argumentative statements. *Burghardt-Cobb*, 2020 WL 1974264, at *1 n.1; *Nelson v. Pima Community College*, 83 F.3d at 1081-82; *Coverdell*, 834 F.2d at 762; *Burch*, 433 F.Supp.2d at 1119. As such, the objection is overruled.

Finally, Plaintiff did not expressly admit or deny UDFs 34 through 37, therefore, the undersigned treats his responses as denials. UDF 34 states: "CDCR has a legitimate interest in providing religious diets to individuals with sincere religious beliefs." Plaintiff argues the "lacto-ovo religious diet isn't vegetarian" and does not accord with his Rastafarian tenets or beliefs. Stating he is "on the side of anyone who desires to save a buck for 'pure and honest' reasons as opposed to 'malicious' reasons," Plaintiff argues peanut butter lunches "are a ubiquitous commodity" in CDCR, and because there is "no vegetarian diet in accordance with Rastafari dietary tenets," peanut butter lunches are "the most suitable religious diet option that is 'absolutely vegetarian.'" Plaintiff contends "Defendant Howard and the RRC could have, should have, at the least approved Plaintiff's request until their 'plant based' diet was established." He states that "Defendant Howard's unilateral denial of a true vegetarian diet is tantamount to dereliction of duty." Plaintiff's objection is overruled. First, Plaintiff's response does not address whether CDCR has a legitimate interest in providing religious diets to those with sincerely held religious beliefs. Rather, it includes argumentative statements and improper legal conclusions. *Burch*, 433 F.Supp.2d at 1119. To the extent Plaintiff's response asserts the vegetarian diet is not vegetarian and does not accord with Rastafarian beliefs or posits what Defendant Howard could have or should have done, again, his response does not challenge the veracity of Defendant's fact – that CDCR has a legitimate interest in providing religious diets to those with sincerely held religious beliefs. *Burghardt-Cobb*, 2020 WL 1974264, at *1 n.1.

UDF 35 provides: "CDCR has a legitimate interest in controlling costs in a streamlined food service." Here, Plaintiff contends that "the overabundant 'CDCR produced' PNB lunches are 'well within' [its] streamlined budget" and that CDCR does not offer a religious diet that omits "eggs and fish;" thus it did not offer "a religious vegetarian diet" that comported with Plaintiff's religious dietary tenets. Plaintiff's challenges amount to speculation and legal conclusions that peanut butter lunches "are 'well within'" CDCR's streamlined budget. *Burch*,

433 F.Supp.2d at 1119. Further, the balance of Plaintiff's response concerns the vegetarian diet; therefore, it does not challenge the veracity of Defendant's fact that it has a legitimate interest in controlling costs as concerns food service. *Burghardt-Cobb*, 2020 WL 1974264, at *1 n.1.

UDF 36 states: "It would be incredibly expensive to provide inmates with the meals and diets of their choice." Here, Plaintiff contends: (1) declarant Philips "will attest to the fact that a kosher meal is way more costly than a humble PNB lunch;" (2) that he was not "requesting a meal of choice" because his choice would have involved "beans, rice, potatoes, vegetables, and pancakes;" and (3) that his request "was in response" to [CDCR, RRC, Philips, and Howard] not having a religious diet" that did not contain "eggs and fish, lacto 'yuck' ovo." First, Plaintiff's contention that Food Manager Philips would "attest to the fact that a kosher meal" is more expensive that peanut butter lunches is speculative, argumentative and unsupported by any evidence. *Burch*, 433 F.Supp.2d at 1119. Second, whatever Plaintiff's "meal of choice" would have included does not challenge the veracity of Defendant's fact – that providing "meals and diets of" inmates' choice would be expensive. *Burghardt-Cobb*, 2020 WL 1974264, at *1 n.1. Moreover, the undersigned finds that Plaintiff's request for all peanut butter lunches is indeed a "meal of choice" because it reflects Plaintiff's preference for peanut butter over cheese and eggs. Finally, Plaintiff's assertion that his request for peanut butter lunches was a response to a lack of a religious diet that did not include eggs and fish also does not challenge the veracity of Defendant's fact that expenses would be prohibitive if inmates were to be provided with meals and diets of their choice. *Id.*

UDF 37 states: "Prison resource allocation would be significantly impacted if individual modifications of existing diets were permitted." Plaintiff did not reproduce or respond to UDF 37. Because Plaintiff has offered no response or evidence to challenge UDF 37, the presumed denial is overruled.

The undersigned has reviewed the Declaration of T. Philips, Correctional Food Manager II at KVSP. In relevant part, Philips declares as follows:

> CDCR has a legitimate interest in controlling costs in a streamlined food service. In particular, it would be incredibly expensive to provide inmates with the meals and diets of their choice. The

> logistics of recording every incarcerated person's modification and personal preferences would be inefficient and the expense would be astronomical. Specifically, the cost of sourcing foods from different vendor, the cost of developing menus that provide sufficient nutrition, the administrative overhead costs of recording and cataloging every inmate's preference, and the additional cost for kitchen staff to prepare these different diets would be overwhelming. In addition, certain modifications would not be feasible because they do not satisfy nutrition requirements. Therefore, prison resource allocation would be significantly impacted if individual modifications of the existing diets (notwithstanding modifications on a medical basis) were permitted. For these reasons, I believe that CDCR has legitimate interests in providing streamlines and cost-efficient food service while still providing religious diets to those with sincere beliefs.

(*See* Doc. 18-6 at 2, ¶ 3.)

Courts consistently have held that a prison has a legitimate interest in limiting special religious dietary options to save money. *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993); *Sefeldeen v. Alameida*, 238 F. App'x 204, 206 (9th Cir. 2007) ("the legitimate governmental interest is to reasonably accommodate thousands of inmates' religious dietary needs while also considering budgetary, staff, and security limitations"); *Curry v. Cal. Dept. of Corr.*, No. C-09-3408 EMC (pr), 2013 WL 75769, at *13 (N.D. Cal. Jan. 4, 2013) ("The orderly administration of a program that allows ... prisons to accommodate the religious dietary needs of thousands of prisoners" is a legitimate governmental interest). Courts also have determined that denials of individual food preferences do not amount to a constitutional violation. *See, e.g.*, *Robinson v. Jackson*, 615 F. App'x 310 (6th Cir. 2015) ("[T]here is no constitutional right for each prisoner to be served the specific foods he desires—such as Halal meat—in prison"); *Rains v. Wellman*, No. 2:20-cv-32, 2022 WL 18587783, at *10 (W.D. Mich. Dec. 30, 2022) ("Rain's preference for a diet modification including an alternative source of protein does not state a First Amendment free exercise … claim"). On this record, where Plaintiff sought an individualized modification of the religious vegetarian diet to his preferred peanut butter lunches, the undersigned finds the four *Turner* factors weigh in Defendant's favor.

In short, Plaintiff fails to meet his burden of production and his objections are overruled. Therefore, the undersigned concludes that Plaintiff has failed to establish Defendant Howard's actions were not rationally related to legitimate penological interests. *O'Lone*, 482 U.S. at 348-50;

*Price*, 334 U.S. at 285; *Jones*, 791 F.3d at 1033; *Shakur*, 514 F.3d at 884.

***Summary of Findings***

Defendant Howard met his initial burden of establishing that he did not violate Plaintiff's rights under the First Amendment. *See* Fed. R. Civ. P. 56(c)(1)(A); *Celotex Corp.*, 477 U.S. at 322. And Plaintiff failed to meet his burden of production to establish that a genuine dispute of material fact exists. *See Matsushita*, 475 U.S. at 586. In short, there is no genuine need for a trial in this action as no reasonable jury would return a verdict in Plaintiff's favor. *Matsushita*, 475 U.S. at 587; *Wool*, 818 F.2d at 1436. Thus, Defendant Howard is entitled to summary judgment. *Id.* at 587; *Celotex Corp.*, at 322.

Because the Court has determined Defendant is entitled to summary judgment on Plaintiff's First Amendment free exercise of religion claim, the undersigned declines to address Defendant's qualified immunity defense. *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all").

## VIII. CONCLUSION AND RECOMMENDATION

For the reasons given above, the undersigned **HEREBY RECOMMENDS** that Defendant's motion for summary judgment (Doc. 18) be **GRANTED** and that judgment be entered in Defendant Howard's favor.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be

disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).

A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **July 16, 2026**

UNITED STATES MAGISTRATE JUDGE